United States District Court
for the
Southern District of Florida

| United States of America, | ) | |
|---|---|---|
| Plaintiff | ) | |
| | ) | |
| v. | ) | Criminal Case No. 16-20332-CR-Scola |
| | ) | |
| David Raphael Concepcion, | ) | |
| Defendant. | ) | |

## **Order Adopting Report and Recommendations**

The Defendant is charged in the Superseding Indictment with two counts of possession of a firearm and ammunition by a convicted felon, one count of possession with intent to distribute a controlled substance, and one count of possession of a firearm in furtherance of a drug trafficking crime (ECF No. 3). This matter was referred to United States Magistrate Judge Alicia Otazo-Reyes for a Report and Recommendation on the Defendant's motions to suppress (ECF Nos. 32, 33). On September 6, 2017, Judge Otazo-Reyes issued a Report and Recommendation, recommending that both of the Defendant's motions be denied (ECF No. 95). The Defendant filed objections to the Report and Recommendation (ECF No. 100), to which the Government responded (ECF No. 104).

Pursuant to Federal Rule of Criminal Procedure 59(b), the Court has conducted a *de novo* review of the record and has considered the Defendant's motions, the Government's responses, the transcripts from the evidentiary hearing before Judge Otazo-Reyes, the exhibits introduced at the hearing, including audio-tapes, the parties' post-hearing briefs, the Report and Recommendations, the Defendant's objections, and the arguments made by the parties at the October 12, 2017 hearing. The Court will address each motion to suppress in turn.

1. **Motion to Suppress Regarding August 2012 Incident (ECF No. 32)**

The Defendant's first motion to suppress concerns statements he made on August 19, 2012, after police officers took him to a hospital following a car accident that occurred while the Defendant was speeding away from a police vehicle following a shooting incident at a nearby night club. At the hospital, the Defendant requested to speak with Detective Roberto DeMoya. At some point after arriving at the hospital and speaking with the Defendant, Detective DeMoya advised the Defendant of his *Miranda* rights and obtained a recorded

confession from the Defendant that he was involved in an altercation at the club and had fired a weapon.

Judge Otazo-Reyes found that prior to advising the Defendant of his *Miranda* rights, Detective DeMoya spoke with the Defendant about how he was feeling and about the shooting incident. (Report at 12.) Detective Jean-Francois was also at the hospital, and he testified that Detective DeMoya showed the Defendant a six-pack photo lineup. (Report at 14.) The Defendant initially said he was not involved in the shooting, but after being confronted with the fact that firearms were found in the car that he had been driving, the Defendant admitted that he was involved in the shooting. (*Id.*) At the evidentiary hearing, Detective Jean-Francois did not recall whether the conversation about the firearms found in the car and the viewing of the photo lineup took place before or after Detective DeMoya advised the Defendant of his *Miranda* rights. (*Id.* n.11). Therefore, Judge Otazo-Reyes found that Detective Jean-Francois's testimony did not conflict with Detective DeMoya's testimony that he did not ask about the firearms found in the car until after he administered the *Miranda* warning. (*Id.*) The Government agreed not to introduce any of the Defendant's pre-*Miranda* statements at trial, and Judge Otazo-Reyes concluded that the post-*Miranda* statements should not be suppressed. (Report at 30-31.)

The Defendant argues that Judge Otazo-Reyes erred in finding that Detective DeMoya first confronted the Defendant about the firearms found in the car after administering the *Miranda* warning. (Obj.'s at 2-3.) The Defendant notes that Detective Jean-Francois gave detailed testimony that Detective DeMoya showed the Defendant a photo lineup and confronted the Defendant with the discovery of the firearms. (*Id.*) Since none of this is included on the recording of the *Miranda* warning and the subsequent interrogation, the Defendant argues that this conversation must have occurred before the *Miranda* warning was administered. (*Id.* at 3.) Therefore, the Defendant argues that Detective DeMoya's actions violated *Missouri v. Seibert*, 542 U.S. 600 (2004). (Obj.'s at 1-8.) In *Seibert*, the Supreme Court held that a post-*Miranda* confession was inadmissible because police officers intentionally and strategically obtained a confession before advising the defendant of her *Miranda* rights and then, after a break of only 15 or 20 minutes, read the *Miranda* rights and obtained a second confession. 542 U.S. at 615-617.

The Court agrees with the Defendant that a *Miranda* violation occurred and the pre-*Miranda* incriminating statements should be suppressed. However, there is simply no evidence for the Court to find that Detective DeMoya intentionally violated the Defendant's *Miranda* rights. Detective DeMoya was off-duty and at home when other officers first spoke with the Defendant at the hospital. Detective DeMoya only became involved in this case

because the Defendant specifically requested to speak with Detective DeMoya based upon a rapport the two had developed over several years. There is absolutely no evidence or testimony to establish Detective DeMoya had a plan to violate the Defendant's *Miranda* rights. Rather, at best the evidence established that when the conversation drifted from how the Defendant was feeling after the accident to questions about the shooting, Detective DeMoya neglected to pause the conversation and read the Defendant his *Miranda* rights. Once Detective DeMoya realized the Defendant was incriminating himself, he then read him the *Miranda* rights. Thus, this case involves a technical violation of *Miranda* and falls within the ambit of *Oregon v. Elstad*, 470 U.S. 298 (1985), in which the Supreme Court held that,

> [T]he mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. at 314.

Therefore, the Court sustains the Defendant's objections and finds that there was a technical violation of the Defendant's *Miranda* rights, but overrules the Defendant's objections as to the post-*Miranda* statement and adopts Judge Otazo-Reyes's recommendation that the motion to suppress regarding the August 2012, post-*Miranda* statement be denied.

2. **Motion to Suppress Regarding October 2015 Incident (ECF No. 33)**

The Defendant's second motion to suppress concerns evidence found in an apartment following the Defendant's arrest on October 14, 2015. The apartment was leased by the Defendant's girlfriend, Onegua Mitchell-Sweeting. The Defendant fled into the apartment through the front door while being chased by police officers who had seen him in the possession of narcotics. After briefly entering the apartment, the Defendant came back outside, again through the front door, and was arrested outside of the apartment. Detective DeMoya was at the back door of the apartment and could hear Sweeting crying inside. Sweeting opened the door and stated that "**they** just ran up in here." (emphasis added) (Report at 22-23.) Concerned for her safety, Detective DeMoya conducted a protective sweep of the apartment. During the protective sweep, Detective DeMoya observed, in plain view, marijuana, drug

paraphernalia, and two firearm magazines protruding from a dresser drawer. (*Id.* at 23.) Detective DeMoya then took photographs of the apartment, arrested Sweeting, secured the apartment, and obtained a search warrant. (*Id.* at 23-24.)

Judge Otazo-Reyes concluded that the Defendant does not have standing to challenge the search of the apartment because he did not have his own set of keys to the apartment, he stayed at the apartment at most one night a week, and he was at the apartment during the daytime while Sweeting was at work. (*Id.* at 29.) Judge Otazo-Reyes further concluded that even if the Defendant had standing to challenge the search, Detective DeMoya was justified in entering the apartment to conduct a protective sweep, and the fact that he took pictures during the protective sweep did not vitiate the need to conduct it. (*Id.*)

The Defendant first objects to Judge Otazo-Reyes's finding that the Defendant does not have standing to challenge the search of the apartment. (Obj.'s at 8-10.) The Defendant notes that Judge Otazo-Reyes found Sweeting's testimony to be credible, and Sweeting testified that she and the Defendant:

> [A]re like boyfriend and girlfriend, that he has her keys and will go to her house whenever he pleases, that he sleeps there approximately one night per week, that he is always at the apartment during the daytime . . . that he uses her keys to the apartment when she is not at home, and that she is at work rather than at home most of the time.

(*Id.* at 8.) Therefore, the Defendant argues that the Defendant has at least as much of a privacy interest in the apartment as the defendants in *Jones v. United States*, 362 U.S. 257 (1960), and *Minnesota v. Olson*, 495 U.S. 91 (1990). (*Id.* at 8-9.) Although this is a close question, the Court concludes that the Defendant has standing to challenge the search of the apartment.

The Defendant next objects to Judge Otazo-Reyes's conclusion that Detective DeMoya was justified in conducting a protective sweep of the apartment. (*Id.* at 10.) The Court overrules this objection and concludes that Detective DeMoya had probable cause to conduct a protective sweep of the apartment based on Detective DeMoya's observation that Sweeting was crying and her statement to him that "they just ran up in here."

Finally, the Defendant objects to Judge Otazo-Reyes's conclusion that the fact that Detective DeMoya took pictures did not vitiate the need to conduct the protective sweep. (Obj.'s at 13-16.) The Defendant argues that the search exceeded the limits of a protective sweep because Detective DeMoya was in the apartment for longer than necessary and spent time taking pictures in the apartment following the protective sweep. (*Id.*) Although it appears that

Detective DeMoya was in the apartment for longer than was necessary to conduct the protective sweep, all of the items that served as the basis for the search warrant were in plain view and were observed during the initial protective sweep. There was no evidence that the officers opened drawers of dressers or looked in kitchen cabinets or took any other actions which would have exceeded the scope of a protective sweep. Therefore, the Court concludes that the extra time spent in the apartment after discovering the incriminating items in plain view and the taking of the pictures do not affect the validity of the search warrant.

### 3. Conclusion

Accordingly, the Court **sustains in part and overrules in part** the Defendant's objections (**ECF No. 100**). The Court finds that a technical *Miranda* violation occurred during the August 2012 statement but does not affect the validity of the post-*Miranda* statement; the Court finds that the Defendant has standing to contest the search of the apartment in the October 2015 incident. In all other respects, the Court **affirms and adopts** Judge Otazo-Reyes's recommendations (**ECF No. 95**). Both of the Defendant's motions to suppress are hereby **denied** (**ECF Nos. 32, 33**).

**Done and ordered**, at Miami, Florida, on October 13, 2017.

Robert N. Scola, Jr.
United States District Judge